1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE WESTERN DISTRICT OF WASHINGTON

10

AT SEATTLE

11

| EDIFECS, INC., a Washington corporation, | NO. 2:18-CV-1086 JLR |
|---|---|
| Plaintiff, | **DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC.** |
| vs. | |
| WELLTOK, INC., a Delaware corporation, | **The Honorable James L. Robart** |
| Defendant. | **NOTE ON MOTION CALENDAR: November 22, 2019** |
| | **ORAL ARGUMENT REQUESTED** |

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  1 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

## TABLE OF CONTENTS

<div align="right">Page</div>

INTRODUCTION...........................................................................................5

LEGAL STANDARDS ...............................................................................6

PROCEDURAL HISTORY ........................................................................8

UNDISPUTED FACTS ...............................................................................9
    A    Edifecs' Products vs. Welltok's Products....................................9
    B    Dave Profant's Employment with Edifecs.................................11
    C.   Profant's Co-Workers' Employment with Edifecs and Their
        Transition to Welltok.................................................................12
        1.    Jennifer Forster................................................................12
        2.    David Baehre ....................................................................13
        3.    David Arnone ...................................................................15
        4.    John Schlichting ...............................................................16

ARGUMENT................................................................................................18
    1.    MOTION ONE:    Welltok is Entitled to Summary Judgment
        on Edifecs' Claim for Tortious Interference with
        Contractual Rights Because Edifecs Cannot Establish a
        Prima Facie Claim ...................................................................18
        A.    Edifecs Cannot Establish That it Had a Valid
            Non-Solicitation Agreement With Profant ....................18
        B.    Edifecs Cannot Establish that Welltok Intentionally
            Interfered With the Contract and Caused a Breach or
            Termination ...................................................................20

    2.    MOTION TWO:    Edifecs Cannot Establish That it Suffered
        any Damages, Let Alone Damages in Connection With
        its Claims Against Welltok .......................................................21
    3.    MOTION THREE:    Welltok is Entitled to Summary
        Judgment on Edifecs' Claim for Tortious Interference
        with Business Expectancy Because Edifecs Cannot
        Establish a Prima Facie Case....................................................24
    4.    MOTION FOUR:    Edifecs is Not Entitled to Injunctive
        Relief in Connection With Profant's Actions or
        Fiduciary Duties Because Profant is Deceased..........................26

CONCLUSION ...........................................................................................26

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 7

*Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114 (Wash. Ct. App. 1981) .......... 19

*Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145 (9th Cir. 1998) ........................... 7

*Boli Fed. Bank v. Advance Funding LLC*, 105 F.Supp.3d 1215 (W.D.Wash. 2015) ........................................................................ 20

*Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 839 P.2d 314 (1992) ......................................................................... 18

*Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010) ............................................. 7

*Hudson v. City of Wenatchee*, 94 Wn.App. 990 (1999) ........................................ 24

*Hunt v. Comartie*, 526 U.S. 541 (1999) .................................................................. 7

*Jackson v. Bank of Haw.*, 902 F.2d 1385 (9th Cir. 1990) ....................................... 7

*Kane v. City of Bainbridge Island*, 866 F.Supp.2d 1254 (W.D. Wash 2011) ........ 18

*LVRC Holdingss, LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) ........................... 7

*Leisek v. Brightwood Corp.*, 278 F.3d 895 (9th Cir. 2002) ..................................... 7

*Miller v. Glenn Miller Prods, Inc.*, 454 F.3d 975 (9th Cir. 2006) ........................... 7

*Morgan v. Havir Mfg. Co.*, 887 F.Supp. 759 (ED.Pa. 1994) .................................. 7

*Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ................................. 7

*Tamosaitis v. Bechtel Nat'l. Inc.*, 182 Wn.App. 241 (2014) ................................. 24

*Triton Energy Corp. v. Square D Co.*, 68, F.3d 1216 (9th Cir. 1995) ...................... 8

*Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended* 410 F.3d 1052 (9th Cir. 2005) ................................................. 7

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page**

**Rules**

FRCP 56(a) ...................................................................................6

FRCP 56(c)(3)...............................................................................6

FRCP 56(f)....................................................................................7

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 4
(NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

## INTRODUCTION

Plaintiff Edifecs, Inc. ("Edifecs") asserts claims of Tortious Interference with Contractual Rights and Tortious Interference with Business Expectancy against Welltok, Inc. ("Welltok") predicated on its former employee David Profant's alleged violation of his non-solicitation agreement and breach of fiduciary duties that he owed to Edifecs.  Dkt. 1.  Profant was hired to lead Edifecs' sales department.  Cohen Decl., ¶ 3, Ex. 2; ¶ 17, Ex. 16 (Singh Tr. 44:11-18). He was tasked by Edifecs' CEO and founder, Gupreet "Sunny" Singh, with increasing the company's sales revenue.  See Welltok's Supp. Stmt. of Confidential Facts Filed Under Seal, pg. 1. In order to meet this ambitious goal, Profant hired several sales people, including four employees he had previously worked with at a different company, TriZetto Corporation (TriZetto): Jennifer Forster, Matthew Dziedzic, Derek Baehre, and David Arnone.   John Schlichting was already hired by Edifecs prior to Profant's arrival there.  Cohen Decl., ¶ 5 , Ex. 4 (Schlichting Offer Letter from Edifecs). In approximately two years, Profant and his team were able to increase Edifecs' sales revenue, but this was not acceptable to Singh, who had expected a greater increase. See Welltok's Supp. Stmt. of Confidential Facts Filed Under Seal, pg. 2.

After being reprimanded multiple times for failing to meet sales quotas, Profant's working relationship with Singh became untenable and he eventually left Edifecs and joined Welltok.  Cohen Decl., ¶ 15 , Ex. 14 (Baehre Tr. 92:11-99:3-4).   Singh made it clear that the sales department was not meeting his expectations, and shortly after Profant's departure, Forster, Dziedzic, Baehre, Arnone, and Schlichting also left Edifecs and joined Welltok to work with several colleagues they had previously worked with at TriZetto.  Cohen Decl., ¶ 17, Ex. 16 (Singh Tr. 66:2-18).  Notably, each employee had worked with Jeff Margolis, Welltok's current CEO, Chaz Hinkle, who works in human resources at Welltok, Lisa Fenton, Welltok's CFO at the time, and Jim Sullivan, Welltok's current Chief Administrative Officer, among others.  Although the evidence shows that each employee had an independent basis for leaving Edifecs

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  5 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

and that they were all at-will employees who could leave at any time, for any reason, Edifecs asserts that Profant improperly solicited them to leave Edifecs and seeks to hold Welltok liable for Profant's alleged breach of his non-solicitation agreement.  Dkt. 1.  Edifecs also asserts that Welltok interfered with Profant's business relationship with Edifecs and seeks to interrupt business with Edifecs' customers.  Id.

There are several problems with Edifecs' claims.  First, Edifecs cannot establish that it had a valid and enforceable non-solicitation agreement with Profant.  The agreement is not limited geographically in its scope and seeks to prevent employees from Edifecs, a Washington corporation, from seeking employment at Welltok, a corporation with its headquarters in Denver, Colorado.[1]  Further, there is no direct evidence that Profant solicited the individual employees to leave Edifecs, let alone that Welltok worked in concert with Profant to induce him to breach his non-solicitation agreement.  Most importantly, there is no evidence in the record that Edifecs suffered any economic damages, an essential element for both its tortious interference claims. Edifecs seeks a permanent injunction enjoining Profant from further soliciting Edifecs' employees and from continuing to breach his fiduciary duties owed to Edifecs.  Because Profant is now deceased, Edifecs' request is now moot.  For these reasons, and as set forth in greater detail below, the Court should grant Welltok's Motions for Summary Judgment.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).  In reaching its decision, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  FRCP 56(c)(3).  "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant;

---

[1]   Welltok also has offices in Burlington, Masschusetts, Roswell, Georgia, and Newport Beach, California. Welltok does not currently have an office located in Washington.

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 6 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

(2) grant the motion on grounds not raised by the party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FRCP 56(f).

The purpose of summary judgment is to eliminate unnecessary trials when no question of material fact exists and when the moving party is entitled to judgment as a matter of law. *Morgan v. Havir Mfg. Co.*, 887 F.Supp. 759 (ED.Pa. 1994). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) *citing Hunt v. Comartie*, 526 U.S. 541, 552 (1999)).

In response to a motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). A mere disagreement about a material issue of fact does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the opposing party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended* 410 F.3d 1052, 1055 (9th Cir. 2005) *citing Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998); *LVRC Holdingss, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (same).

When the nonmoving party has the burden of proof at trial, the party moving for summary judgment need only point that there is an absence of evidence to support the nonmoving party's case. *Farrakhan v. Gregoire*, 590 F.3d 989, 1003 (9th Cir. 2010). In other words, "summary judgment should be granted where the non-moving party fails to offer

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 7 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1  evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp.*

2  *v. Square D Co.*, 68, F.3d 1216, 1221 (9th Cir. 1995).  Therefore, where Edifecs has the burden of

3  persuasion, it has the burden of presenting admissible evidence to defeat Welltok's Motions for

4  Summary Judgment.

5  ### PROCEDURAL HISTORY

6  On March 13, 2017, Edifecs sued its former employee, David Profant, for allegedly

7  soliciting his former coworkers at Edifecs to leave Edifecs and join Profant's new employer,

8  Welltok.  Dkt. 12.  Edifecs' lawsuit against Profant was removed to this Court and assigned Civil

9  Action No. 2:17-cv-00557-JLR.  Edifecs did not sue Welltok or allege any wrongdoing by

10  Welltok in its first lawsuit.

11  Profant, his former co-workers at Edifecs, and Welltok produced thousands of pages of

12  documents to Edifecs in response to its discovery requests.  These documents included email

13  communications dated September 1, 2016, or later between Profant and his former co-workers at

14  Edifecs and call records identifying any telephone calls or text messages between Profant and his

15  former co-workers at Edifecs dated November 1, 2016, through the date each was hired at

16  Welltok.

17  On March 28, 2018, Profant tragically suffered a heart attack and passed away.  After

18  Profant's death, Edifecs filed a Motion for Voluntary Dismissal which the Court granted on

19  August 9, 2018.

20  On July 24, 2018, despite not having attempted to add Welltok as a party during a year of

21  litigation against Profant, Edifecs filed its Complaint in this case seeking to hold Welltok liable

22  for essentially the same allegations it previously had unsuccessfully raised against Profant.

23  Edifecs' Complaint alleges claims for Tortious Interference with Contractual Rights and Tortious

24  Interference with Business Expectancy.  Dkt 1.  It seeks a permanent injunction against Welltok,

25  monetary damages in an amount to be proven at trial, and attorney fees and costs.  *Id.*

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 8 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

**UNDISPUTED FACTS**

**A.   Edifecs' Products vs. Welltok's Products.**

Since it was founded in 1996, Edifecs has focused on developing data exchange products that improve Electronic Data Interchange (EDI).  Cohen Decl., ¶ 17,  Ex. 16 (Singh Tr., 15:23-25).  EDI focuses on the exchange of electronic information between companies.  Id. (Singh Tr. 16:5-23).  Edifecs' products allow documentation of electronic data and processing of that information as it is sent and received.  Id.  Edifecs' first product, which it continues to deliver today, is SpecBuilder, which documents information that is exchanged between business partners, such as a sales report or an invoice for remittance.   Id. (Singh Tr. 17:5-16).  SpecBuilder is a product that can be utilized by businesses across various industries, and Edifecs' target customers at the company's inception were the top 2,000 companies operating globally and the top 1,000 companies in the United States. Id. (Singh Tr. 17:17-18:1).  After HIPAA was enacted in 1996 and established standards for the electronic exchange of healthcare data, the code for SpecBuilder was reworked to include HIPAA specifications, and demand for SpecBuilder grew.  Cohen Decl., ¶ 29 Ex. 27.

By 2000, Edifecs shifted its focus entirely to targeting customers in the healthcare industry.  Id. at ¶ 17, Ex. 16 (Singh Tr. 19:14-19).  It began offering another product, around that time, XEngine.  XEngine was a transaction processing tool which validates and looks at data to ensure that it is compliant with set rules for processing before it sends data to a backup system. Id. (Singh Tr. 19:20-21:11).

By 2014, Edifecs added several other Electronic Data Interchange products.  Id. (Singh Tr. 25:7-19.)  It added Transaction Management, the precursor to what it calls today its Smart Trading product line.  Id.  Transaction Management functions essentially as a portal sitting on top of the transaction processing engine that provides visibility into how data is flowing.  Id. (Singh Tr. 276:3-20.)  It allows senders and receivers of data to view that data in different ways

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 9 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1  to conduct analysis and statistics.   In approximately 2014, Edifecs also began offering its

2  Encounters product which ensures the processing, management, tracking, and processing of

3  encounter information submitted by the customer.   Id. (Singh Tr. 26:21-27:5).   It also began

4  offering its Enrollment product which ensures clean processing of healthcare enrollment

5  information.  Id.

6       In contrast, Welltok's products and services, including its Health Optimization Platform,

7  provide individuals with personalized health-related information, programs, and other resources

8  designed to improve their health.   The platform also provides individuals with incentives to

9  encourage them to participate in such activities through targeted messaging, automated calls,

10  emails, interactive messaging, direct mail, and web-based or live-agent calls based on their

11  preferences and needs.   Participation in Welltok's programs is sponsored by its health plan,

12  healthcare provider, and employer group customers.

13       In sum, Edifecs' products focus on the exchange of electronic healthcare data with health

14  plans and medical providers to allow them to be compliant with HIPAA and other healthcare

15  regulations and to efficiently process health insurance claims.   On the other hand, Welltok works

16  with health plans, healthcare providers, and employer groups to engage and incentivize

17  individuals to take actions that will improve their overall health and reduce healthcare costs.

18  Welltok provides an activation platform which allows a health plan, healthcare provider, and

19  employer group to encourage individuals to take actions such as getting a flu shot, obtaining a

20  mammogram, or attending an annual visit.   Cohen Decl., ¶ 14 Ex. 13 (Forster Tr. 33:6-21).   As

21  Edifecs acknowledges in its Complaint, although "Welltok, headquartered in Denver, Colorado,

22  is also in the healthcare industry, * * * according to its website its products are more consumer-

23  directed than those of Edifecs."   Cohen Decl. Ex. 1 (Profant Complaint, ¶ 4.9).

24  ///

25  ///

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  10
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

**B.     Dave Profant's Employment with Edifecs.**

Prior to joining Edifecs, Dave Profant worked at TriZetto, an information technology company that provides software programs to improve the administration of healthcare.  Profant worked in TriZetto's sales department along with David Arnone, John Sclichting, Derek Baehre, and Matthew Dziedzic and with Jennifer Forster, who worked in sales operations.

In December 2014, Edifecs approached Profant about potentially running its sales department.  Id. (Singh Tr. 44:11-13-45:5-15).  Edifecs presented Profant with an offer letter dated December 26, 2014.  Cohen Decl., ¶ 3 Ex. 2.  Profant was hired as Senior Vice President of Sales.  His initial compensation included a base salary, plus a guaranteed commission for 2015 and a new hire bonus.  In 2016, he was compensated with a base salary and was eligible for a variable commission.  In order to receive payment on his commission, Profant had to be employed on the date the commission is paid.  Commission payments were made quarterly.  See Supp. Stmt. of Confidential Facts Filed Under Seal, Pg. 1.

Profant began working at Edifecs as Senior Vice President of Sales on January 5, 2015. He reported directly to Edifecs' CEO and founder, Gupreet "Sunny" Singh.  As head of the sales department, Profant's primary responsibility was to manage the sales department and motivate the sales team to achieve their sales revenue goals.  Cohen Decl, ¶ 17 Ex. 16 (Singh Tr. 46:22-28:22).  In order to attempt to meet this goal, Profant hired several new sales associates, including David Arnone, Derek Baehre, and Matthew Dziedzic.  Id.  He also hired Jennifer Forster to work in collaboration with the sales team on the operations side.  Id.  See Supp. Stmt. of Confidential Facts Filed Under Seal, Pg. 1-2.

After multiple reprimands from Singh, Profant announced his intent to resign from Edifecs in early November 2016 and left Edifecs on or about November 11, 2016.  Cohen Decl. Ex. 1 (Profant Complaint, ¶ 4.9).  Profant joined Welltok on November 21, 2016 as its Senior Vice President of Sales.  Cohen Decl., ¶ 3 Ex. 2 (Profant Offer Letter from Edifecs).

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

**C.      Profant's Co-Workers' Employment with Edifecs and Their Transition to Welltok.**

**1.      Jennifer Forster**

Jennifer Forster began working with Profant at TriZetto in 2012 in operations and conducted financial planning and analysis.  Cohen Decl., ¶ 14 Ex. 13 (Forster Tr. 14:5-9; 21:11-16).   Forster and Profant were colleagues and friends.  Id.  At TriZetto, Forster met Jeff Margolis, who is currently Chairman and CEO of Welltok.  Id.  (Forster Tr. 22:15).

After ten years at TriZetto, and playing a role in the due diligence process for Cognizant's acquisition of TriZetto, Forester decided it was time for a change.  Id. (Forster Tr. 31:22-25-32:1-7).   TriZetto asked her to stay, but she declined.  Id. (Forster Tr. 32:14-15). Forster met Singh in 2015 and accepted a position as Vice President of Sales Operations.  Her responsibilities were similar to those she had at TriZetto.

Forster was not happy during her tenure at Edifecs and, in particular, did not appreciate Singh's aggressive management style.  Id. (Forster Tr. 78:2-79:23).  For example, Singh set up a conference call at midnight and yelled at her in front of her subordinate during the call.  Id. By November 2016, she was not "terribly happy" and felt it was time to move on from Edifecs.   Id. (Forster Tr. 95:21-25-96:1-3).  On November 1, 2016, Forster sent her resume to Chaz Hinkle, who works in human resources at Welltok.  Id. (Forster Tr. 95:5-19).  She worked previously with Hinkle for several years at TriZetto, and he was part of her professional network.  Id. She also knew Margolis, Welltok's Chairman and CEO, from working previously with him at TriZetto.  Id.  (Forster Tr. 22:7-23:10).   When Profant left Edifecs in November 2016, he called her and told her that he was leaving the company, but he did not inform her of his new employer. Id. (Forster Tr. 93:4-94:17).   She discovered that Profant was working at Welltok sometime in December 2016 before Christmas.  Id.  (Forster Tr. 94:25-95:8).

Forster accepted a position with Welltok as Vice President of Sales Operations in 2017. Id. (Forster Tr. 14:5-9).   Her responsibilities include overseeing Salesforce, which is where

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 12 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1   Welltok's pipeline and forecasting originates and forecasting bookings and revenues. Id.

2   (Forster Tr. 14:2-25). She also does commission planning, business planning, strategic planning,

3   quarterly business reviews, and monthly operating reviews. Id.

4       **2.**    **Derek Baehre**

5       Derek Baehre met Profant over 20 years ago while Baehre was working at a company

6   called Erisco, which was acquired by TriZetto in 2001. Id. at ¶ 15, Ex. 14 (Baehre Tr. 38:9-12).

7   Profant was leading a training that Baehre was attending. They struck up a conversation and

8   became friends and continued their friendship throughout their time working in TriZetto's sales

9   team. Id. (Baehre Tr. 38:13-39:11). After TriZetto, Baehre worked in sales for a company

10  called Optum. Id. (Baehre Tr. 36:1-7).

11      Baehre was not happy at Optum; he decided to explore other opportunities. Id. (Baehre

12  Tr. 85:20-86:3). He considered other employers in addition to Edifecs. Id. (Baehre Tr. 86:21-

13  22). He reached out to Profant, who told him that there was a sales position at Edifecs, and

14  Baehre applied through the regular application process. Id. (Baehre Tr. 85:20-86:10).

15      Baehre was hired as Vice President of Sales – East at Edifecs. Id. (Baehre Tr. 29:4-10).

16  He had a base salary and a guaranteed commission and received a new hire bonus his first year

17  of employment. Subsequently, he was paid a base salary and was eligible for additional variable

18  commission. Ex. 9 (Baehre Tr. 35:13-16). He was promoted to Senior Vice President of Sales –

19  East and Government. Id. Although he received a promotion, his compensation did not change.

20  See Supp. Stmt. of Confidential Facts Filed Under Seal, pg. 2. He was responsible for selling

21  Edifecs' products to third-party contractors that held government contracts. Id. (Baehre Tr.

22  30:22-31:10).

23      After Profant left in November 2016, he was promoted again to Senior Vice President of

24  Sales. Id. (Baehre Tr. 21:22-30:17). His base salary was increased. In that position, his

25  responsibilities included overseeing all of the sales and account management efforts in all

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY**
**JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 13**
**(NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

markets except for government.  Id. (Baehre Tr. 30:4-12).  Baehre was asked by Sumeet Bhatia,

Singh's right-hand man, to terminate employees in the sales department who would "be loyal to"

Profant.  Id. (Baehre Tr. 56:18-57:8; 58:11-60:5).  Baehre terminated Matt Dziedzic and Jeff

Bruce in December 2016 and planned to place John Schlichting on a performance plan.  Id.

There was a trend of terminating anyone who was perceived as loyal to a departing executive at

Edifecs.  Id. (Baehre Tr. 57:13-58:10).  Prior to Profant's tenure, Sam Upala oversaw the sales

department at Edifecs and, when he left the organization, Edifecs fired an employee named

Schweta who operated as chief of staff for Upala.  Id.

Baehre joined Edifecs hoping it would either become publicly traded or be purchased and

receive a one-time substantial payout, i.e., an "equity transition."  Id. (Baehre Tr. 62:4-13).

However, the people who joined Edifecs presumably for the equity transition left, and the equity

transition appeared unlikely.  Id. (Baehre Tr. 61:17-63:17).  There was substantial turnover at

the executive level which led to volatility in the company.  Id.  Baehre was disappointed that

Edifecs was not purchased and frustrated with turnover at the executive level, and he decided to

leave Edifecs.  Id.

Profant informed Baehre that Profant was leaving Edifecs in November 2016.  Id.

(Baehre Tr 92:12-17).  He informed Baehre that his working relationship with Singh had become

untenable.  Id. (Baehre Tr. 92:11-993:4).  Baehre eventually found out that Profant had started

working at Welltok.  Id. (Baehre Tr. 95:4-12).  Baehre first considered joining Welltok in the

summer of 2016.  Id. (Baehre Tr. 106:16-107:4).  He had spoken with employees at Welltok who

had previously worked at TriZetto.  Id. (Baehre Tr. 106:5-15.)  Since TriZetto had been a

successful company, he was considering joining Welltok.  Id. (Baehre Tr. 105:20-106:1.)  Baehre

understood that Welltok was looking to restructure its sales organization and that there might be

opportunities for him to define a role at the company.  Id.  In late summer to early fall 2016,

Baehre initiated a conversation with Chaz Hinkle, with whom he had previously worked at

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 14
(NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

TriZetto.  Id. (Baehre Tr. 106:9-107:7).  Baehre reached out to other potential employers at that time.  Id. (Baehre Tr. 108:22-109:6).  Baehre sent his resume to Hinkle on October 31, 2016, referring to a job posting for an open sales position at Welltok.  Id. (Baehre Tr. 112:5-25).

Baehre accepted a position at Welltok as Vice President of Sales.  Id. (Baehre Tr. 26:21-24).  He was responsible for new business development and account management for all markets.  Id. (Baehre Tr. 27:8-23).  Welltok later restructured its approach to markets and moved to a centric market where business units were associated with employer, health plan, and provider.  Id.  Baehre became the head of new business sales and vice president of new business sales for health plans.  Id.

### 3. David Arnone

David Arnone's first job after college was working at TriZetto as a National Account Executive, managing accounts with existing customers.  Id. at ¶ 19, Ex. 18 (Arnone Trnas. 29:5-22).  He worked with Profant, who served as a mentor to him.   Id. (Arone Tr. 144:7-15.)  He worked for a short period of time for Lagrange Systems, which does not operate in the healthcare market, but decided that the company was not likely to be successful and moved on.  Id. (Arnone Tr. 27:10- 28:23; 34:18 - 35:3).  He talked to John Schlichting about a sales opening at Edifecs and decided to apply.  Id. (Arnone Tr. 35:4-16).   Arnone was hired as a Regional Account Manager at Edifecs.  He initially reported to Kerry Waltrip and eventually reported directly to John Schlichting.  Id. (Arnone Tr. 32:5-10).

After Profant left, Arnone told Profant that he no longer intended to stay at Edifecs.  Id. (Arnone Tr. 53:2-17).  After Arnone decided to leave, he began searching for jobs and found a job posting for Welltok.  Id. (Arnone Tr. 50:12- 51:3).  He also reached out to his network which included Profant.  Id. (Arnone Tr. 50:4-17).  Profant also told him about the open position at Welltok.  Id.  Profant told Arnone that he could not just hire him, that he would need to apply and see how it goes.  Id. (Arnone Tr. 51:6-22; 53:2-17.)  Arnone applied through Welltok's

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1   website and followed up by sending his resume on October 31, 2016, to Hinkle, who he knew

2   from working at TriZetto.  Id. (Arnone Tr. 63:23- 65:8).   Arnone also knew Rob Scavo,

3   Welltok's Chief Operating Officer, from TriZetto.   Id. (Arnone Tr. 65:9-25; 68:2-23).   Arnone

4   was motivated to apply for the position at Welltok because of the opportunity to work with Jeff

5   Margolis, who was well known and respected within the healthcare industry.   Id. (Arnone Tr.

6   63:23- 64:9).   Prior to receiving a job offer from Hinkle, Arnone did not recall other

7   conversations with anyone at Welltok.  Id. (Arnone Tr. 76:15-18).  After speaking with Hinkle,

8   Arnone was excited about the opportunity at Welltok, because he had the opportunity to go after

9   bigger accounts.  Id. (Arnone Tr. 76:15- 77:18).  Arnone also considered opportunities presented

10  by job recruiters at that time.  Id. (Arnone Tr. 77:19- 79:11).

11      Arnone was hired as a National Sales Director at Welltok. His responsibility was to

12  obtain new business and to maintain and grow existing accounts.  Id. (Arnone Tr. 42:8-15).

13  Arnone received an increase in compensation in his new role as Welltok's National Sales

14  Director, which he viewed as fair, unlike his compensation at Edifecs.  Id. (Arnone Tr. 83:2-18).

15      **4.      John Schlichting**

16      John Schlichting has worked in the healthcare IT industry for over 30 years.   Cohen

17  Decl., ¶ 22, Ex. 21 (Schlichting Tr. 41:15-17).  Prior to working at Edifecs, he worked in various

18  sales roles at TriZetto and worked with Jeff Margolis, Rob Scavo, Jim Sullivan, and Chaz

19  Hinkle, among other current Welltok employees. Id. (Schlichting Tr. 45:3-48:16).

20      Schlichting transitioned to Edifecs prior to Profant on or about July 1, 2014.  Cohen Decl,

21  ¶ 5, Ex. 4.  He was offered a position at Edifecs as Senior Vice President of Sales. Id.  When he

22  arrived at Edifecs in 2014, it was beginning to expand its sales department.  Profant was hired

23  shortly after his arrival on January 5, 2015, and Profant hired Forster, Arnone, Baehre, and

24  Dziedzic, among other former TriZetto employees.

25  ///

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 16
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1    Like several of the other individual employees at issue in this case, Schlichting did not

2    have a positive working relationship with Singh. Cohen Decl., ¶ 22, Ex. 21 (Schlichting Tr. 103:

3    5-13).   He felt he was talked down to and did not appreciate being reprimanded in front of his

4    colleagues.  He ultimately did not feel supported in his position by Singh or several members of

5    the executive leadership.

6    About a year into his tenure at Edifecs, he had a phone call with Hinkle at Welltok about

7    potentially joining Welltok, but he did not pursue that opportunity at the time. Id. (Schlichting

8    Tr. 91:25) He decided to leave Edifecs on or about October 2016, because he no longer wanted

9    to work with Singh. Id. (Schlichting Tr. 123:22-124:5).  He applied for sales positions at Cotiviti

10   and Next Health.  Id. (Schlichting Tr. 124:6-14).  During an interview with Next Health's CEO,

11   Eric Grossman, he inquired as to whom Next Health's main competitors were. Id. (Schlichting

12   Tr. 95:4-13, 124:22-125:24).   Grossman informed him that Welltok was their primary

13   competitor, and Schlichting determined at that point that he would rather work at Welltok with

14   his former TriZetto colleagues with whom he has successfully worked with in the past, than

15   work at Next Health.  Id.  Schlichting initiated a call with Profant and asked Welltok to send him

16   an offer letter.  Id. (Schlichting Tr. 87: 21-89:22, 96:2-4, 120:21-121:18).  He was confident in

17   his decades of experience in the industry and the fact that Jeff Margolis and several other

18   executives worked with him at TriZetto and knew his work, so that he did not think he needed to

19   go through the typical hiring process.  He was certain if he asked for an offer letter, then he

20   would be presented with a compensation package to consider. Id. (Schlichting Tr. 124:15-21).

21   On or about January 23, 2017, Schlichting was offered a position as National Sales

22   Director at Welltok.  He waited until February 1, 2017, to tender his resignation at Edifecs,

23   because Edifecs required him to be a current employee in order to receive payment for his

24   commissions.  Cohen Decl., ¶ 5 Ex. 4 (Schlichting Offer Letter from Edifecs), Id. at ¶ 22, Ex. 21

25   (Schlichting Tr. 104:14 – 105:6).  As soon as Schlichting saw that his commission payment had

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  17
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

landed in his bank account, he sent a resignation email to Daniel Toscano in Edifecs' human resources department.

## ARGUMENT

**1.   MOTION ONE:  Welltok is Entitled to Summary Judgment on Edifecs' Claim for Tortious Interference with Contractual Rights Because Edifecs Cannot Establish a Prima Facie Claim.**

In Washington, a claim for Tortious Interference with Contractual Rights requires that the plaintiff establish the following elements: (1) a valid contract; (2) that the defendant had knowledge of the contract; (3) that the defendant intentionally interfered with the contract and caused a breach or termination; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resultant damages.  *Kane v. City of Bainbridge Island*, 866 F.Supp.2d 1254, 1265 (W.D. Wash 2011) *citing Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 839 P.2d 314, 322 (1992).

### A.   Edifecs Cannot Establish That it Had a Valid Non-Solicitation Agreement With Profant

When Profant joined Edifecs, he signed an offer letter defining certain terms and conditions of his employment.   Cohen Decl.,¶ 3 Ex. 2.   He also signed an Employment Confidential Information, Intellectual Property, Non-Solicitation and Non-Competition Agreement.  Paragraph 5 of the Agreement includes the Non-Solicitation provision at the crux of this case:

> Non-Solicitation Provisions: I shall not during the term of my employment and for a period of one year following the termination of my employment for any reason, directly, indirectly or by any action in concert with others:
>
> (c) Induce, attempt to induce, entice or solicit any employee or consultant of the Company to leave such employment or to engage in, be employed by, perform services for, participate in or otherwise be connected with, either directly or indirectly, me or any enterprise with which I may be associated after termination of my employment with the Company; or

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  18 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

> (d) Hire, employ or otherwise use the services of, or assist another in employing or using the services of, any individual who is or has been an employee or consultant of the Company within the six months preceding any offer of employment without the prior written consent of the Company.

Non-solicitation agreements may be enforceable if they are reasonably necessary to protect the business or good will of the business, "giving special consideration to time and area restrictions." *Armstrong v. Taco Time Int'l, Inc.*, 635 P.2d 1114, 1117-18 (Wash. Ct. App. 1981).  Here, the text of Profant's Non-Solicitation Agreement is not limited by geographic area and is unenforceable on its face.  Further, under the particular circumstances of this case, the agreement is not enforceable because it is not reasonable to restrict the ability of former employees who worked for Edifecs, a company in Washington, to pursue employment with Welltok, a company headquartered in Colorado.

Moreover, Edifecs does not have a protectable interest in preventing its former employees from working for a company that does not in any way compete with it.  There is no evidence in the record, and Edifecs cannot produce any, that demonstrates that Edifecs' products compete with Welltok products.  Each witness deposed in this case, including Edifecs' own witnesses, acknowledge that Edifecs' products focus on improving the exchange of healthcare data within the industry, while Welltok's products focus on changing patient behaviors in order to improve their health outcomes.  Cohen, Decl., ¶ 22, Ex. 21 (Schlichting Tr. 127:7-128:10). While Edifecs and Welltok have some overlapping healthcare markets in which they operate, such as health plans, healthcare providers, and government entities, because their products are so different, they sell to different business units even where they share the same customer.  Because their customers are massive entities, such as Cigna, Humana, or a variety of Blue Cross Blue Shield entities, they often have different business contacts at the same entity and are not competing for the same dollars allocated by the customer.  Id. (Schlichting Tr. 109:21-110:11). In fact, Schlichting testified in his depositions that while he was selling Welltok products, if it

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 19
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

came to his attention that a Welltok customer had a need for an Edifecs' product, he would refer the customer to Edifecs.  Id. (Schlichting Tr. 128:14-130:6).

Enforcing the Profant agreement would also be against public policy, because it would unfairly limit the ability of former employees at Edifecs to work at a company located in an entirely different state and that sells products which in no way affects the ability of Edifecs to sell its products.  A contract that is unenforceable because of public policy concerns cannot form the basis of a tortious interference with contract claim.  *Boli Fed. Bank v. Advance Funding LLC*, 105 F.Supp.3d 1215, 1221 (W.D.Wash. 2015).

**B.     Edifecs Cannot Establish that Welltok Intentionally Interfered With the Contract and Caused a Breach or Termination.**

There is no direct evidence that Profant solicited his former co-workers at Edifecs to leave their employment with Edifecs in order to work for Welltok, let alone that Welltok was aware of Profant's alleged solicitation or intentionally interfered with Profant's non-solicitation agreement.  Each of the former Edifecs' employees at issue testified in their depositions that they independently determined that they no longer wanted to work at Edifecs.  This destroys any causal connection between any harm that Edifecs could have suffered from losing these particular employees and any alleged solicitation by Profant.  In any case, Edifecs would have lost them, if not to Welltok, than to some other employer.  Each former Edifecs' employee testified that they were actively looking for alternative employment and considered multiple new employers before eventually settling at Welltok.

For example, Jennifer Forster testified that being reprimanded by Singh in front of her subordinate made her upset, and that she had started looking for other employers in the summer of 2016.  Cohen Decl., ¶ 14, Ex.13  (Forster Tr. 78:2-79:23).  Arnone testified that he was yelled at by Singh about failing to renew a contract with an existing customer and that after deciding to leave Edifecs, he entertained job leads presented by various recruiters and was actively searching

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 20 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

for a job prior to reaching out to Chaz Hinkle at Welltok.  Cohen Decl., ¶ 19, Ex. 18 (Arnone Tr. 149:1-9).  Derek Baehre testified that he was disappointed that Edifecs was not bought by another company or did not become publicly traded.  He was also frustrated with the high turnover at the executive level.  Moreover, he testified that he laid off Matt Dziedzic and Jeff Bruce and was asked to place John Schlichting on a performance plan, because these employees were perceived as loyal to Dave Profant.  Baehre testified that Edifecs set a pattern of firing employees who were loyal to a departing executive.  Therefore, any harm that may have occurred due to these employees leaving Edifecs was not caused by Profant breaching his agreement but, rather, by Edifecs' own actions in failing to retain its employees.

There is no evidence that Welltok was aware that Profant was allegedly soliciting Edifecs employees or that it was working in concert with Profant.  In fact, Welltok was aware of Profant's non-solicitation agreement and, when it received several unsolicited job applications from former Edifecs' employees, it sent Profant an addendum to his offer letter forbidding him to do anything that would violate his agreement.  Cohen Decl.  Ex. 2.  Welltok's letter to Profant is evidence that it did not form the requisite intent to interfere with Profant's contract.

## 2.    MOTION TWO:  Edifecs Cannot Establish That it Suffered any Damages, Let Alone Damages in Connection With its Claims Against Welltok.

Edifecs seeks monetary damages for payroll and travel and entertainment expenses related to the employment of David Profant, Jennifer Forster, John Schlichting, David Arnone, Derek Baehre, and Matthew Dziedzic.  Cohen Decl., ¶ 20,  Ex. 19 (Menenberg Expert Report, pp. 3, 7).  Edifecs' theory of damages is that because Profant and the individual employees left their employment with Edifecs before the sales team achieved the growth Singh had hoped for, it should be able to recover what it paid these individuals in salary, commission, bonuses, and travel and entertainment expenses incurred in connection with meeting prospective and existing

///

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  21
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1  customers.  Id. (Singh Tr. 66:2-18); (Menenberg Tr. 13:21-14:1, 51:4-6).  As Edifecs' damages

2  expert indicated in his expert report dated July 31, 2019,

> While it is true that Edifecs received some benefits, including sales
> revenue and ongoing client development, from its approximately $5
> million investment during the approximately two years that these
> individuals were Edifecs employees, I understand from my discussions
> with senior management of Edifecs that these amounts were invested with
> the expectation that these employees would work for Edifecs for much
> longer than two years (recognizing there would be future payroll costs for
> them during these additional years of employment) and that their
> contributions would continue to generate incremental sales revenue and
> margin for Edifecs far in excess of its investment in these particular
> executives.  This is consistent with my experience where companies
> typically expect returns from this type of personnel investment for more
> than two years.

10  Id. (Menenberg Expert Report, pp. 6-7).

11      In other words, Edifecs seeks to hold Welltok accountable for the failure of these

12  individuals to perform according to Singh's expectations.  There are several problems with

13  Edifecs' approach to damages.

14      First, compensation for these individuals and travel and entertainment expenses incurred

15  in connection with meeting clients are ordinary business expenses that Edifecs would have

16  incurred regardless of its claims seeking to hold Welltok liable for Profant's alleged breach of his

17  non-solicitation agreement and breach of his fiduciary duties to Edifecs.  Because there is no

18  causal connection between the damages alleged and Profant's conduct, Edifecs cannot establish

19  damages on either of its claims, and summary judgment for Welltok is proper.

20      Further, Edifecs has not asserted a claim that Profant breached his non-compete

21  agreement by leaving Edifecs and joining Welltok.  Therefore, there is no basis whatsoever for

22  claiming Profant's compensation and any travel and entertainment expense he incurred as

23  damages against Welltok.  Edifecs also did not assert that Profant solicited Matthew Dziedzic to

24  join Welltok in its Complaint.  In fact, Edifecs laid off Dziedzic shortly after Profant resigned.

25  Cohen Decl., ¶ 9,  Ex. 8 (Dziedzic personnel file).  Because Edifecs chose to terminate Dziedzic,

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. -  22
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

there is no basis for claiming his compensation and travel and entertainment expenses as damages. Yet, Edifecs' damages expert included these expenses in his calculation of damages. Cohen Decl., ¶ 20, Ex. 19 (Menenberg Expert Report, p. 3, 7).

Moreover, Profant, Arnone, Schlichting, Baehre, Dziedzic, and Forster were all at-will employees. None of them were employed by Edifecs pursuant to a contract for a defined period of time. Each of them signed offer letters containing the following provision:

> **At-Will Employment**
>
> Your employment with the Company will be on an "at-will" basis, meaning that either you or the Company may terminate your employment at any time for any reason or no reason, without further obligation or liability beyond that set forth in this letter. No manager at Edifecs is authorized to alter the at-will relationship unless it is done in writing and signed by the Chief Executive Officer.

There is no evidence that any of the individual employees at issue altered their at-will arrangement with Edifecs. Further, each of the individual employees, including Profant, signed an Employee Confidential Information, Intellectual Property, Non-Solicitation and Non-Competition Agreement which contained the following provision:

> <u>**At-Will Employment**</u>: This Agreement is not a promise or contract for employment by the Company, *does not constitute an agreement for employment for any particular period of time*, and does not entitle me to any specific employment. My employment or continued employment with the Company shall be "at-will" and is subject to termination at any time, with or without cause. In this Agreement, the term employment means employment as a seasonal or temporary employee, as well as a full-time or regular part-time employee of the Company." (Emphasis added.)

Edifecs is the drafter of these agreements and was well aware that these individual employees could depart from the company at any time for any reason. Yet, Edifecs' theory of damages is predicated on its "reasonable expectation" that Profant and his sales team would continue their employment for longer than 2 years. Cohen Decl., ¶20 Ex. 19 (Menenberg Tr. 75:20-76:2). In light of the at-will employment arrangement that it had with each of the

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 23 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

individual employees, it was not reasonable for Edifecs to expect that they would continue their employment with the company for any particular length of time.

Edifecs' damages expert acknowledges that "Edifecs received some benefits, including sales revenue and ongoing client development" from its investment in these individual employees, but failed to account for the sales revenues generated by each of the individual employees at issue and the value of ongoing client development in any way in calculating Edifecs' damages. Id. (Meneberg Expert Report, p. 74:23-76:2). This is likely because there is no evidence that Edifecs suffered any economic loss in connection with its claims that Profant solicited its employees and breached his fiduciary duties to Edifecs. See Supp. Stmt. of Confidential Facts Filed Under Seal, pp. 1-2. Because Edifecs cannot establish that it suffered any monetary damages, an essential element of its claims, Welltok is entitled to summary judgment on both of Edifecs' claims.

**3.    MOTION THREE: Welltok is Entitled to Summary Judgment on Edifecs' Claim for Tortious Interference with Business Expectancy Because Edifecs Cannot Establish a Prima Facie Case.**

A claim for Tortious Interference with Business Expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship or expectancy; (3) the intentional inference inducing or causing a breach of termination of the relationship or expectancy; (4) the interference was for an improper purpose or used improper means; and (5) resultant damage. *Hudson v. City of Wenatchee*, 94 Wn.App. 990, 998 (1999). Importantly, "a claim for tortious interference with business expectancy requires a threshold showing of resulting pecuniary damages." *Tamosaitis v. Bechtel Nat'l. Inc.*, 182 Wn.App. 241, 249 (2014).

Edifecs seeks to hold Welltok liable for Profant's alleged breach of fiduciary duties including a duty of loyalty and a duty of confidentiality. Compl., ¶ 51. (Dkt 1.) As an initial

DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 24
(NO. 2:18-CV-1086 JLR)

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

matter, Edifecs' Complaint fails to meet the requisite pleading requirements because it simply asserts that,

> Welltok intentionally interfered with Edifecs' business relationship and Edifecs' business expectancies by wrongfully encouraging, supporting, assisting, and inducing Profant to breach his duties to Edifecs. Welltok's conduct was wrongful inter alia because it intended to harm Edifecs and hoped to win business away from Edifecs' customers by leveraging goodwill and information that belonged to Edifecs.

Compl., ¶ 53. (Dkt 1.)

Edifecs' Complaint fails to identify what conduct Profant engaged in that would constitute a violation of his duty of loyalty or his duty of confidentiality and how Welltok purportedly worked in concert with Profant in order to hold Welltok liable for Profant's conduct. As noted above, Welltok was aware of Profant's employment agreement with Edifecs and sent Profant a letter forbidding him to do anything that would violate his agreement. This is evidence that Welltok did not form the requisite intent to intentionally interfere with Edifecs' business expectancy.

Further, there is no evidence that Welltok interfered with Edifecs' business relationship with Profant. The evidence shows that Singh reprimanded Profant multiple times for not meeting Singh's expectations and that eventually their working relationship became "untenable." Id. (Baehre Tr. 92:11-99:3-4). There is no evidence that Profant would have chosen to stay on at Edifecs but for some conduct on the part of Welltok. Additionally, Edifecs did not have a reasonable business expectancy that Profant would continue his employment with the company, because his employment was at-will, as designed by Edifecs.

Edifecs further fails to meet pleading requirements because it asserts that Welltok induced and benefited from Profant's breach of his fiduciary duties and that Edifecs was damaged without specifying how Welltok benefited from Profant's conduct or how Edifecs was harmed by it. Edifecs fails to meet the threshold requirement of showing pecuniary damage because there is no evidence that Edifecs suffered any economic loss as a result of any conduct

**DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC. - 25 (NO. 2:18-CV-1086 JLR)**

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

by Profant.  See Supp. Stmt. of Confidential Facts Filed Under Seal, pp. 1-2. Singh could not identify in his deposition a single customer that Edifecs lost after Profant left.  Cohen Decl., ¶ 17, Ex. 16 (Singh Tr. 96:21-23).  Because Edifecs cannot establish a prima facie case for its claim for Tortious Interference with Business Expectancy, Welltok is entitled to summary judgment.

**4.      MOTION FOUR: Edifecs is Not Entitled to Injunctive Relief in Connection With Profant's Actions or Fiduciary Duties Because Profant is Deceased.**

In its prayer, Edifecs seeks a permanent injunction against Welltok restraining any actions by Welltok that would disregard Edifecs' rights.  Both of Edifecs' claims are predicated on wrongful conduct by Profant, including continuing to solicit Edifecs' employees and benefiting from Profant's continued breach of fiduciary duties owed to Edifecs.  On March 28, 2018, Profant sadly passed away.  Because he is deceased, Edifecs is not entitled to a permanent injunction against Welltok enjoining conduct by Profant.

<u>**CONCLUSION**</u>

Edifecs cannot establish monetary damages on its Tortious Interference with Contractual Rights or Tortious Interference with Business Expectancy Claims, an essential element of both claims.  Welltok is entitled to summary judgment on each of Edifecs' claims.  In the alternative, Welltok is entitled to summary judgment on Edifecs' claim for Tortious Interference with Contractual Rights; Edifecs cannot establish that it had a valid Non-Solicitation Agreement with Profant or that Welltok should be held liable for any alleged solicitation by Profant.  Also in the alternative, Welltok seeks a ruling that Edifecs is not entitled to a permanent injunction against Welltok predicated on Profant's conduct, as Profant is now deceased.  For the foregoing reasons, Welltok requests that this Court dismiss Plaintiff Edifecs, Inc.'s claims in their entirety.

DATED this 29th day of October 2019.

BETTS, PATTERSON & MINES
By:  */s/ Anne Cohen*
Anne Cohen, WSB #41183
Attorneys for Welltok, Inc.

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2019, the foregoing **DEFENDANT WELLTOK, INC.'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF EDIFECS, INC.** was electronically filed with <u>US District Court for the Western District of Washington</u> through the CM/ECF eFiling system.

I further certify that on October 29, 2019, I served a copy of the foregoing:

| | |
|---|---|
| Aravind Swaminathan<br>Nicole Tadano<br>Orrick, Herrington & Sutcliffe LLP<br>701 Fifth Ave., Suite 5600<br>Seattle, WA  98104-7097<br>**Fax:  206-839-4301**<br>**Email: aswaminathan@orrick.com**<br>**ntadano@orrick.com**<br>*Of Attorneys for Plaintiff* | Robert L. Uriarte (*pro hac vice*)<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025<br>**Fax:  650-614-7401**<br>**Email: ruriarte@orrick.com**<br>*Of Attorneys for Plaintiff* |
| James Pooley (*pro hac vice*)<br>James Pooley Law Offices PLLC<br>325 Sharon Park Dr., #208<br>Menlo Park, CA  94205<br>**Fax:  -----**<br>**Email: james@pooley.com**<br>*Of Attorneys for Plaintiff* | |

_X_   Electronically by the court's eFiling system, if the party was registered.  Service was accomplished at the party's email address as recorded on the date of service in the eFiling system.

_____   By facsimile at the telephone number listed above.

_X_   By (courtesy) email at the email address listed above.

_X_   By mailing a copy thereof, placed in a sealed envelope addressed as listed above and deposited in the United States mail at Portland, Oregon, and that postage thereon was fully prepaid.

By  */s/ Carrie J. Cook*

Carrie J. Cook, CP
Legal Assistant/Certified Paralegal

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338