UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDIFECS, INC.,<br><br>  Plaintiff,<br>v.<br><br>WELLTOK, INC.,<br><br>  Defendant. | CASE NO. C18-1086JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR EVIDENTIARY SANCTIONS |

**I. INTRODUCTION**

Before the court is Plaintiff Edifecs, Inc.'s ("Edifecs") motion for evidentiary sanctions. (Mot. (Dkt. # 27).) Edifecs seeks sanctions based on Defendant Welltok, Inc.'s ("Welltok") alleged spoliation of (1) records of text messages on Welltok employees' personal cell phones, and (2) online job postings. (*See* Mot. at 5.) Welltok filed a response. (Resp. (Dkt. # 34).) Edifecs filed a reply. (Reply (Dkt. # 38).) The court held oral argument on November 1, 2019. (*See* 11/1/19 Dkt. Entry.) The court has

considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully informed, the court GRANTS in part and DENIES in part Edifecs's motion for sanctions.

## II. BACKGROUND

This action revolves around Edifecs's allegation that Welltok's former Vice President, David Profant, "engaged in an unlawful raid of senior Edifecs employees." (Mot. at 5.) Mr. Profant left Edifecs for Welltok in late 2016. (*See* Mot. at 6[1]; Resp. at 6.) Shortly after, a number of Edifecs employees with whom Mr. Profant was close (the "Employees") applied for and were offered positions at Welltok. (*See, e.g.*, Uriarte Decl. (Dkt. # 28) ¶¶ 9-11, Exs. 8-10.) Edifecs alleges that Mr. Profant "secretly negotiate[d] with Welltok executives to leave Edifecs for Welltok." (*See* Mot. at 5-6.) Welltok responds that the Employees made independent decisions to apply for their Welltok positions. (*See* Resp. at 8.)

Edifecs originally sued Mr. Profant in March 2017 (the "Profant Case") for breach of a clause in Mr. Profant's employment agreement that disallowed Mr. Profant from soliciting Edifecs employees for one year following termination of his Edifecs employment. (*See* Compl. (Dkt. # 1) ¶ 18.) During that litigation, Mr. Profant's counsel represented that Mr. Profant conducted a thorough search for responsive documents, including text messages, in his "personal devices (iPhone and iPad), and the PC he uses for work (a Welltok-owned device)." (*See* 4/24/17 Ltr. (Dkt. # 24-2) at 3.) Mr. Profant

---

[1] Throughout this order, the court cites to documents in the record using the page numbers provided by the court's electronic filing system.

passed away unexpectedly in March 2018 as the Profant Case was in progress. (*See* Resp. at 8.) Edifecs decided to shift the focus of its litigation away from Mr. Profant and towards Welltok. (*See id.* at 8 (citing Cohen Decl. (Dkt. # 35) ¶ 24, Ex. 23 at 1).) Edifecs filed this action against Welltok on July 4, 2018, alleging a new tortious interference theory. (*See* Compl. ¶¶ 40-49.) Edifecs then voluntarily dismissed the Profant Case. (*See* Resp. at 8.)

Mr. Profant disclosed his Edifecs employment agreement to Welltok. (*See* Uriarte Decl. ¶ 3, Ex. 2 ("Addendum").) Welltok prepared and sent the Addendum to its offer letter to Mr. Profant on November 13, 2016, which stated that "[w]e do not believe your acceptance of employment . . . will violate the [non-solicitation clause] or any other obligation you have to Edifecs, in part, because we are not a competitor of that company." (*See id.* at 3.) "Nevertheless," the Addendum goes on, "we have some special rules that you must follow." (*Id.*) The "special rules" instruct Mr. Profant on how he may and may not communicate with his former Welltok colleagues. (*See id.* ("Do not affirmatively contact former colleagues telephonically, by text or by email during any restricted period to discuss employment with Welltok or to suggest or encourage them to apply for employment at Welltok.").)

Welltok, which was not a defendant in the Profant Case, purportedly received notice of that lawsuit on March 15, 2017, and issued a litigation hold notice to former

//

//

//

Edifecs employees Dave Profant, Jennifer Forster, John Schlichting, Dave Arnone, Derek Baehre, and Matt Dziedzic. (*See* Mot. at 8.[2])

Edifecs served subpoenas on Welltok, Mr. Profant, and the Employees on May 24, 2017. (*See id*. at 7.) The Employees, through Welltok's counsel, objected to producing a number of documents. (*See* Resp. at 6.) Nevertheless, Welltok's counsel agreed to produce emails between Mr. Profant and the Employees, including "all emails to or from Mr. Profant dated from September 1, 2016 to the date when each left Edifecs to work for Welltok." (*See* Cohen Decl. ¶ 22, Ex. 21.) On October 11, 2017, Mr. Profant's counsel made a formal demand under the Stored Communications Act, 18 U.S.C. § 2702(c)(2), to Mr. Profant's cell phone carrier, AT&T Wireless, requesting "copies of any and all text message records sent from or received by Mr. Profant's AT&T-subscriber cell phone number . . . for the time period November 1, 2016 to the present, including but not limited to text message detail, logs and transcripts." (Cohen Decl. ¶ 23, Ex. 22.) By April 24, 2018, counsel for the parties appear to acknowledge that nearly all of Mr. Profant's text messages for the relevant time period had been deleted. (*See* Cohen Decl. ¶ 24, Ex. 23.)

In August 2017, Welltok switched to a new job posting system and lost access to its prior job posting records. (Mot. at 9-10; Uriarte Decl. ¶ 15, Ex 14 ("Welltok cannot access its history of sales job postings during the period January 1, 2016 to July 30, 2017, because Welltok no longer uses the same job posting platform that it used during that

---

[2] The litigation hold notice does not appear in the record.

period . . . .").) Edifecs believes that "Welltok hopes to profit from its spoliation of job posting records by arguing that there were public job postings for the subject positions. Edifecs cannot test this argument due to Welltok's spoliation." (Mot. at 6 n.2.)

Welltok asserts that Edifecs was unwilling to take Welltok depositions that were "repeatedly offered." (Resp. at 9.) Edifecs did not depose the Employees until September and October 2019. (*See* Cohen Decl. (Dkt. # 35) ¶¶ 2, Ex. 1 (Bhardwaj Dep.), 3, Ex. 2 (Forster Dep.), 4, Ex. 3 (Arnone Dep.), 5, Ex. 4 (Singh Dep.), 33 (declaring that Welltok's counsel did not include excerpts from the depositions of "Mr. Baehre, Mr. Dziedzic, Mr. Hinkle or others because they occurred recently and to date they have only been provided in draft form.").) During these depositions, Edifecs's counsel questioned the Employees about their use of their personal email accounts and cell phones, and whether they maintained records of text messages sent to or received from Mr. Profant in late 2016 and early 2017. (*See, e.g.*, Forster Dep. 115:18-25 ("Q: Was it your habit to delete text messages after you received them from Mr. Profant? A: It's my habit to periodically clean out my text messages, but not specifically – usually because I get pages of conversations. Q: How often do you do that? A: Depends on when I have downtime.").) The Employees testified that they searched their email accounts for and produced responsive documents in the Profant Case. (*See, e.g.*, Forster Dep. at 159:21-24 ("Q: You don't know if those emails were collected? A: I gave everything that I had at the time when I was asked for them.").)

The Employees were not parties to the Profant Case. A number of the Employees used their cell phones for work purposes. (*See* Reply at 4 (citing Swaminathan Decl. ¶ 4,

Ex. 2 (Arnone Dep.) at 53:24-54:8).)  It is unclear from the briefing at what date the Employees deleted potentially relevant text messages (or whether they were deposed on this topic), and if they did so prior to joining Welltok.

### III. ANALYSIS

**A.  Timeliness of Welltok's Response**

As an initial matter, Edifecs asks the court to strike Welltok's response brief because Welltok filed it two days late.  (*See* Reply at 2.)  Edifecs filed its motion on September 20, 2019, and noted it for October 11, 2019.  Welltok's opposition was due on October 7, 2019.  *See* Local Civil Rules LCR 7(d)(3).  Welltok filed its response on October 9, 2019.  (*See* Resp.)  Although the court does not condone Welltok's late filing, Edifecs asks the court to impose harsh sanctions on Welltok.  The court finds that Welltok would be substantially prejudiced if the court disregarded entirely its late-filed brief.  Therefore, the court considers Welltok's opposition, but cautions Welltok that it must strictly adhere to the deadlines imposed by the Local Civil Rules and the court's scheduling order.

**B.  Spoliation Standard**

Spoliation occurs when a party "destroys or alters material evidence or fails to preserve" evidence when the party is under a duty to preserve it.  *Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012).  A party has a duty to preserve evidence "when litigation is pending or reasonably anticipated."  *Moore v. Lowe's Home Ctrs., LLC*, No. C14-1459RJB, 2016 WL 3458353, at *3 (W.D. Wash. June 24, 2016). "Circuit courts describe the duty to preserve evidence as attaching when

a party should know that evidence may be relevant to litigation that is anticipated, or reasonably foreseeable." *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1188 (D. Or. 2012) (internal quotation marks omitted). "[W]hen litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

If a party had a duty to preserve evidence and did not, "the court considers the prejudice suffered by the non-spoliator and the level of culpability of the spoliator, including the spoliator's motive or degree of fault." *Moore*, 2016 WL 3458353, at *3. "[A] finding of 'willfulness, fault, or bad faith,'" satisfies the culpability component. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). "There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Federal Rule of Civil Procedure] 37 against a party who fails to obey an order to provide or permit discovery." *Id.* at 958.

//

There is scant Ninth Circuit authority squarely considering whether and under what circumstances spoliation of evidence may be imputed to a defendant who did not participate in the spoliation. *See Pettit v. Smith*, 45 F. Supp. 3d 1099, 1110 (D. Ariz. 2014) (discussing authorities). The current trend among district courts appears to be to impute liability for an agent's spoliation to the principal "based on traditional notions of agency law, in which a defendant principal exercises control and authority over its third-party agent who possess the spoliated evidence." *See Dykes v. BNSF Ry. Co.*, No. C17-1549-JCC, 2019 WL 1128521, at *6 (W.D. Wash. Mar. 12, 2019) (citing *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 523 n.16 (D. Md. 2009)); *see also Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015).

A district court imputed a nonparty's spoliation to a party where the spoliator was "an interested third party that controlled [the party's] personnel file and had access to it, and [was] also providing [the party's] legal defense," *see Ramos v. Swatzell*, No. EDCV121089BROSPX, 2017 WL 2857523, at *6 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. EDCV121089BROSPX, 2017 WL 2841695 (C.D. Cal. June 30, 2017). Another court did the same where "not merely a disinterested" third party destroyed physical evidence while on notice that litigation involving that evidence would likely ensue, and "could potentially be liable for indemnifying" the party. *Dykes v. BNSF Ry. Co.*, No. C17-1549JCC, 2019 WL 1128521, at *6 (W.D. Wash. Mar. 12, 2019).

//

Other district courts have declined to impute a non-party's spoliation to a party where a defendant's employee destroyed a USB thumb drive "to protect himself," not his employer, had not disclosed its existence to the employer, and had not consulted with the defendant company about discarding the device, *see Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D.S.C. 2008) (holding that the employee was not acting within the scope of his authority when he destroyed the thumb drive), and have observed that "spoliation inferences are only appropriately entered against the party that actually destroyed the evidence," *Gurvey v. Fixzit Nat'l Install Servs., Inc.*, Civ. No. 06–1799(DRD), 2011 WL 550628, at *5 (D.N.J. Feb. 8, 2011).

**C.    Duty to Preserve**

The first prong of the spoliation analysis requires the court to determine when Welltok's duty to preserve arose. A duty to preserve can arise before litigation is filed, and is determined based on "an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Apple*, 888 F. Supp. 2d at 990 (quoting *Micron Tech.*, 645 F.3d at 1320). Edifecs argues that Welltok's duty to preserve arose as early as November 2016, but not later than March 15, 2017. (*See* Mot. at 6-7.) The November 13, 2016 date is based on Welltok's provision to Mr. Profant of the Addendum, and based on Welltok's response to an Edifecs request for production. (*See id.*)

The court first concludes that Welltok's duty to preserve did not arise on November 13, 2016. First, Welltok had not hired the Employees as of that date. (*See*

Compl. (Dkt. # 1) ¶ 24 (alleging that Jennifer Forster resigned from Edifecs on December 16, 2016, and that the other Employees resigned from Edifecs on February 1, 2017).) Welltok could not reasonably anticipate on November 16, 2016, that Edifecs would sue Welltok based on Edifecs employees moving to Welltok when they had not yet done so.

Second, the November 16, 2016 Addendum appears to represent Welltok taking precautions to prevent legal conflict with Edifecs by instructing Mr. Profant to not violate his contract with Edifecs. (*See* Addendum.) The Addendum is aimed—at the most—at preventing litigation, not responding to litigation that could reasonably be anticipated at the time. (*See id.*) Third, Edifecs reads too far into Welltok's discovery responses. Edifecs requested "ALL DOCUMENTS related to the potential or actual recruitment or hiring of David Profant." (Uriarte Decl. ¶ 6, Ex. 5 at 9.) Welltok responded in part by stating "Welltok also objects to this request *to the extent* that it is overly broad and unduly burdensome and requires the production of documents protected by the attorney-client privilege and/or work product privilege." (*Id.* (emphasis added).) Contrary to Edifecs's arguments, this response can hardly be read as an admission that Welltok anticipated Edifecs would sue Welltok prior to March 15, 2017. *See* Moore, 2016 WL 3458353, at *3-4 (finding that a defendant did not have a duty to preserve a plaintiff's emails despite later invoking work product protections).

The court concludes that Welltok's duty to preserve arose on March 15, 2017, the date of the earliest evidence in the record showing Welltok was aware of Edifecs's lawsuit against Profant. (*See* Mot. at 8.) Edifecs sued Welltok directly only after Mr. Profant died unexpectedly. (*See* Resp. at 8.) However, the lawsuit against Mr. Profant,

then a Welltok employee, was so related to Welltok's hiring decisions, that Welltok should have been aware of a probability that Edifecs would sue Welltok as of March 15, 2017. Additionally, Welltok does not contest that Welltok reasonably anticipated litigation with Edifecs as of March 15, 2017. (*See generally* Mot.)

**D.     Spoliation**

As soon as Welltok's duty to preserve arose, it was "under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Apple*, 888 F. Supp. at 991 (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). Therefore, the next question the court must decide is whether Welltok met its duty to preserve with respect to employee text messages and job posting data.

1. Text Messages

The text messages at issue resided on the Employees' personal cell phones. (*See* Resp. at 13; Reply at 4.) Although Edifecs presents substantial evidence that the Employees texted with Mr. Profant in late 2016 to January 2017, (*see* Uriarte Decl. ¶ 8, Ex. 7), Edifecs presents no evidence that the Employees maintained records of those text messages as of March 15, 2017 (*see generally* Mot.; Reply). At oral argument, counsel for Edifecs confirmed that they did now know when the messages were deleted, even after deposing the Employees. Based on the Employees' deposition testimony, it appears likely that the Employees deleted text messages on their personal cell phones as a matter of course. (*See* Resp. at 10 (citing Forster Dep.; Arnone Dep.).) The court cannot

//

conclude that the messages were spoliated absent evidence that the text messages still existed at the time Welltok's duty to preserve arose.

Even if such evidence existed, Edifecs has not persuasively argued why the Employees' alleged spoliation should be imputed to Welltok. Edifecs, despite having deposed the Employees, does not present evidence that the Employees deleted text messages to protect Welltok, as opposed to protecting themselves, or simply to clear space on their phones. (*See generally* Mot.) Accordingly, the court concludes, based on the record before it, that Welltok cannot be held responsible for spoliation based on deleted employee text messages.

2. Job Postings

The court finds, however, that Welltok engaged in spoliation by destroying its historical job posting data. Once a duty to preserve attaches, a defendant may be required to "suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster*, 462 F. Supp. 2d at 1070. Welltok failed to do so when it switched systems and lost its online job posting records in August 2017. (Mot. at 9-10; Uriarte Decl. ¶ 15, Ex 14 ("Welltok cannot access its history of sales job postings during the period January 1, 2016 to July 30, 2017, because Welltok no longer uses the same job posting platform that it used during that period . . . .").) Welltok's destruction of evidence was willful because Welltok had "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *See Leon*, 464 F.3d at 959 (quoting *Kitsap Physicians Serv.*, 314 F.3d at 1001).

//

## E. Relevance

"Sanctions for spoliation are appropriate only if the party had notice that the evidence is potentially relevant to a claim." *EEOC v. Fry's Electronics, Inc.*, 874 F. Supp. 2d 1042, 1044 (W.D. Wash. 2012) (citing *Leon*, 464 F.3d at 958). Welltok argues that "Edifecs failed to put Welltok on notice that it believed its historical job postings were relevant or should be preserved" before Edifecs sued Welltok directly. (*Id.* at 12.) However, Welltok should have been aware that the job postings were at least "potentially relevant" to the litigation regardless of whether Edifecs formally requested them. *See Kitsap Physicians Serv.*, 314 F.3d at 1001.

Welltok's historical job post data was certainly "potentially relevant," although Edifecs likely overstates its importance to this case. If the Employees applied to their positions through the job posts, the posts could support Welltok's position that the Employees independently applied for their positions, as opposed to applying by way of prodding from Mr. Profant. Additionaly, if the data still existed, Edifecs would be able to confirm whether the positions at issue were in fact posted publicly.

## F. Appropriate Remedy

"In considering what spoliation sanction to impose, if any, courts generally consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple*, 888 F. Supp. 2d at 992 (internal quotations omitted).

//

Although Welltok is at fault for deleting its job post data, the court finds that Welltok's "degree of fault" is low. *See id.* (internal quotations omitted). The court does not condone Welltok's conduct in deleting its job posting records, but the record is insufficient to establish that Welltok engaged in widespread or reckless spoliation. Edifecs has shown, at most, that Welltok lost its job posting records when it switched to a new system.

Second, evidence of resulting prejudice to Edifecs is not particularly strong. Emails sent by the Employees in which they applied for their positions were produced, along with other emails from the same custodians. (*See* Cohen Decl. ¶ 22, Ex. 21.) Additionally, Edifecs has now deposed the Employees, and has had the opportunity to examine them in detail about the circumstances surrounding their decisions to apply for positions at Welltok. (*See, e.g.*, Bhardwaj Dep.; Forster Dep.; Arnone Dep.; Singh Dep.) Edifecs has not persuasively explained how the existence or lack thereof of job posting records for the Employees' positions has more than de minimis relevance to this case. The records of the job postings, without more, would do little to prove that the Employees applied because of improper actions by Welltok or because they simply wanted to work there. Edifecs should be able to glean material evidence on the same topic "from the documents actually produced, the extensive deposition testimony, and the written discovery between the parties." *See in re Oracle Corp.*, 627 F.3d at 386; *see also Apple*, 888 F. Supp. 2d at 994 (finding that prejudice to the non-spoliating party was "not particularly strong" where the spoliating party had produced documents and emails sent to and from the Employees, and the non-spoliating party deposed key witnesses whose

emails were not preserved).  Therefore, the court finds that the degree of prejudice to Edifecs is low.

Third, although Edifecs seeks an adverse inference instruction (*see* Mot. at 16), the court finds that "there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple*, 888 F. Supp. 2d at 992 (internal quotations omitted).  Adverse inference instructions are "among the most severe sanctions a court can administer." *Id.* at 994 (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 619 (S.D. Tex. 2010)); *see also Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI(EDL), 2008 WL 2830752, at *10 (N.D. Cal. Nov. 6, 2008) ("An adverse inference instruction is a harsh remedy.")); *Zubulake*, 220 F.R.D. at 219-20 ("In practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome . . . . Accordingly, the adverse inference instruction is an extreme sanction and should not be given lightly.").

The limited prejudice to Edifecs from the loss of the job postings suggests that an adverse inference instruction is too harsh a sanction in this case.  *See, e.g.*, *Keithley*, 2008 WL 2830752, at *10.  Instead, the court concludes that a limited exclusion sanction is more appropriate.  Therefore, the court ORDERS that at trial, Welltok will not be allowed to present testimony or evidence as to the contents of any particular job postings for the positions to which the Employees applied.  Welltok will be able to present evidence and argue that the Employees applied in response to job postings, without discussing their contents, and Edifecs may cross-examine on and argue the significance

//

of the missing job postings.  The court finds that this limited exclusion is sufficient to remedy the limited prejudice Edifecs may face due to the loss of the job postings.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Edifecs's motion for evidentiary sanctions (Dkt. # 27).

Dated this 8th day of November, 2019.

JAMES L. ROBART
United States District Judge